**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-11925

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

HANTSON ALEXANDER CLARK,

a.k.a. Hank,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:23-cr-00417-CLM-NAD-1

————————————

Before JILL PRYOR, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

Hantson Clark appeals his convictions for conspiracy to possess with intent to distribute methamphetamine and fentanyl, distribution of methamphetamine and fentanyl, and two counts of using a communication facility to facilitate the commission of a drug trafficking crime.  On appeal, Clark argues that: (1) the district court abused its discretion by allowing several government witnesses to testify about inadmissible hearsay; (2) the court abused its discretion by preventing him from impeaching a codefendant with his prior felony convictions; and (3) the court erred in denying his motion for judgment of acquittal.  After careful review, we affirm.

## I.

We review evidentiary rulings for abuse of discretion. *United States v. Keegan*, 161 F.4th 1334, 1338 (11th Cir. 2025).  But even where evidence is erroneously admitted or excluded, "we will not reverse if the government meets its burden of showing that the error is harmless." *United States v. Moore*, 76 F.4th 1355, 1367 (11th Cir. 2023).  Reversal is warranted only if the error resulted in actual prejudice by having substantial and injurious effect or influence on the jury's verdict. *Id.*  We review de novo the denial of a motion for judgment of acquittal on sufficiency of evidence grounds, viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences and credibility choices in its favor. *United States v. Fleury*, 20 F.4th 1353, 1367 (11th Cir. 2021).

## II.

First, we are unpersuaded by Clark's claim that the court abused its discretion by allowing several government witnesses to

offer inadmissible hearsay testimony at trial. The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). In other words, hearsay is "an out-of-court statement offered to prove that what the statement says is true." *Keegan*, 161 F.4th at 1338. "Hearsay testimony is generally inadmissible," but "many exceptions to the rule against hearsay have arisen." *Id*. at 1338–39.

Here, Clark says that the court improperly allowed several government witnesses to testify that a particular phone number -- ending in -5409 -- belonged to him, in violation of the rule against hearsay. But the record reveals that none of these witnesses' testimony about the -5409 number amounted to inadmissible hearsay.

First, DEA Agent Daniel Haynes testified that he knew the -5409 number was Clark's because he recognized Clark's voice on the wiretapped calls of that number and he knew Clark's voice through an in-person conversation with Clark and from listening to Clark's jail phone calls. This testimony was not hearsay because it did not involve an out-of-court statement being offered to prove the truth of the matter asserted therein. *Id*. Agent Haynes merely testified that he was personally familiar with Clark's voice and had concluded, after personally listening to the wiretapped calls, that the person associated with the -5409 number was Clark.

Second, DEA Task Force Officer Lance Willingham mentioned the -5409 number. But Willingham never testified that the

-5409 number belonged to Clark.  When Officer Willingham was testifying about the contents of text messages between a -5708 number, which he said belonged to Stevens, and the -5409 number, the government asked Willingham, "And what is your understanding as to who [the -5409] phone number belong[ed] to?" Clark's counsel made a hearsay objection, so the court instructed the government to lay a predicate for Officer Willingham's knowledge of the number's owner.  Instead, the government moved on, asking further about messages between the -5708 and -5409 numbers, and Willingham never identified the owner of the -5409 number.

Third, Clark's codefendant, Terrence Stevens, testified about the -5409 number.  Stevens said he knew the -5409 number was Clark's because he personally communicated with Clark using that number via FaceTime and text message, so he identified the number as Clark's based on his own personal experience.  Since Stevens's testimony was not based on an out-of-court statement offered to prove the truth of the matter asserted, it was not hearsay.

Finally, DEA Task Force Officer Josh Powers testified about the -5409 number.  Powers initially was discussing the -5708 number, which he identified as belonging to Stevens, based on Powers's investigation in the case.  When the government next asked Powers, "Based on the investigation, did you know who the [-5409 number] belonged to?," Clark's counsel made a hearsay objection. After the government asked again, Clark's counsel objected again, and the court told the government to "lay a predicate" for Officer Powers's knowledge of the number's owner, the government said

it was concerned that Powers's answer might run afoul of the court's earlier rulings that had limited the testimony about a separate DEA investigation into Clark. The district court pointed out that several witnesses -- including codefendant Stevens -- had identified Clark as the number's owner. Clark's counsel responded that he had no objection if Powers's testimony was not being offered for the truth of the matter asserted. The government then asked Officer Powers, "who did you understand th[e] [-5409] phone number to belong to?" and Powers replied, "Hantson Clark."

This statement by Powers was not hearsay. Powers merely was saying that through his investigation, he understood the -5409 number belonged to Clark to explain why he took the next steps in the investigation -- that is, to conduct surveillance near Stevens's house. *Id.* Thus, Powers's testimony was not recounting an out-of-court statement offered to prove the truth of the matter asserted, and the court did not abuse its discretion in allowing it.

In any event, even if the district court erred in admitting Powers's testimony, this error was harmless. As we've detailed, the government sufficiently proved that the -5409 number belonged to Clark, properly, through Agent Haynes and codefendant Stevens. There also was properly admitted testimony at trial that on the day of Stevens's arrest, when Clark arrived at Stevens's house, the -5409 number texted Stevens "Here." Accordingly, any statement from Officer Powers about Clark's number did not have a "substantial and injurious effect or influence on the jury's verdict," and we affirm. *Moore*, 76 F.4th at 1367 (citation modified).

### III.

We also find no merit to Clark's argument that the district court abused its discretion in preventing him from admitting his codefendant Stevens's prior felony convictions for purposes of impeachment.  Under the Federal Rules of Evidence, evidence of a witness's prior felony conviction (when that witness is not a criminal defendant) offered to attack the witness's credibility generally must be admitted.  Fed. R. Evid. 609(a)(1)(A).  However, the rule changes significantly "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later."  *Id*. 609(b).  In that case, a "stale" conviction is admissible to attack a witness's credibility only if the conviction's "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  *Id*. 609(b)(1).

When the conviction is stale -- i.e., greater than ten years old within the meaning of 609(b) -- the "substantially outweighs" standard "creates a strong presumption against the use for impeachment purposes of stale convictions."  *United States v. Pope*, 132 F.3d 684, 687 (11th Cir. 1998); *see United States v. Pritchard*, 973 F.2d 905, 908 (11th Cir. 1992) ("In this circuit, there is a presumption against the use of prior crime impeachment evidence over ten years old.").  Due to the "presumption . . . against the use of prior crime impeachment evidence over ten years old[,] such convictions will be admitted very rarely and only in exceptional circumstances."  *United States v. Tisdale*, 817 F.2d 1552, 1555 (11th Cir. 1987) (citation modified).  In deciding whether to admit a witness's stale felony conviction for impeachment purposes, the court

should consider, *inter alia*, the impeachment value of the prior crime, the age of the conviction, the importance of the witness' testimony, the centrality of the credibility issue, and the offering party's need for impeaching evidence. *Pritchard*, 973 F.2d at 909.

Here, the district court did not abuse its discretion in finding that the probative value of Stevens's stale convictions to attack his credibility did not substantially outweigh their prejudicial effect. We recognize that Stevens -- the only person who saw Clark hand the drugs over to him -- was an important government witness. Nevertheless, the impeachment value of Stevens's offenses was relatively low. Stevens's prior offenses were a 2004 conviction for unlawful possession of a controlled substance, a 2004 conviction for possession of a forged instrument in the third degree, and 2007 convictions for distribution of crack cocaine and felon in possession of a firearm -- all of which occurred more than 17 years before Clark's 2024 trial.[1] Further, Clark's counsel thoroughly cross-examined Stevens at trial, impeaching him based on his belief that he would receive a more lenient sentence on his pending federal charges based on his testimony in this case. Stevens also admitted on cross-examination that he was a drug dealer and had other sources of drugs besides Clark. Moreover, Clark's counsel was able to put many of Stevens's prior felonies before the jury -- when he asked Stevens about his indictment in this case, he read Stevens's felon-in-possession charge that listed his prior drug and gun convictions.

---

[1] Clark does not argue on appeal that the convictions were not stale based on Stevens's release dates.

In short, Clark was able to attack Stevens's credibility on multiple grounds without formally admitting his prior felony convictions under Rule 609.  Regardless, any error by the court in excluding Stevens's prior convictions was harmless.  Not only did Clark's counsel introduce several of Stevens's prior felony by reading from Stevens's indictment, there also was significant evidence corroborating Stevens's testimony about Clark.  This included testimony from DEA Agent Stephanie Upton, who said she saw a black male in a white tank top with Stevens in front of Steven's house near a black sedan. Officer Powers followed that sedan and identified Clark as the driver wearing a white tank top.  On this record, the district court did not abuse its discretion in excluding Stevens's stale felony convictions under Rule 609(b), and we affirm on this ground.

## IV.

Finally, we reject Clark's claim that the district court erred in denying his motion for judgment of acquittal on all counts because the government's evidence was solely predicated on his codefendant Stevens's unreliable and uncorroborated testimony. We will uphold the denial of a motion for judgment of acquittal and affirm the jury's guilty verdict "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Fleury*, 20 F.4th at 1367 (citation modified).

It is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  21

U.S.C. § 841(a)(1).  In other words, "a person violates § 841(a)(1) when []he knowingly possesses with the intent to distribute illegal drugs of some sort, even if []he does not know exactly which controlled substance it is."  *United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021).  To sustain a § 841(a) conviction for possession with intent to distribute, the government must prove three elements: (1) knowledge; (2) possession; and (3) intent to distribute. *United States v. Cremades*, 160 F.4th 1296, 1302 (11th Cir. 2025).  The government can prove each element with circumstantial evidence, and the possession element may be established through actual or constructive possession.  *Id.*  "Constructive possession exists when a defendant has dominion or control over the premises in which the object is kept."  *Id.* (citation modified).  The "intent to distribute" element "'may be inferred from the amount of the drug involved.'"  *Id.* (citation modified).

"To convict a defendant under § 846 for conspiracy to possess with intent to distribute a controlled substance in violation of § 841(a)(1), the government needs to prove beyond a reasonable doubt that (1) there was an agreement between two or more people to violate § 841(a)(1); (2) the defendant knew about the agreement; and (3) the defendant voluntarily joined the agreement." *Colston*, 4 F.4th at 1187.  Further, to sustain a conviction for use of a communication facility to facilitate a drug trafficking crime under 21 U.S.C. § 843(b), the government must prove that the defendant "knowingly and intentionally used a communication facility . . . to facilitate the commission of a drug trafficking crime."  *United States*

*v. Gregory*, 128 F.4th 1228, 1250 (11th Cir. 2025). A "communication facility" includes a telephone. *Id.* "To prove facilitation, [the government] must have established that the telephone call comes within the common meaning of facilitate -- to make easier or less difficult, or to assist or aid." *Id.*

Determinations as to a witness's credibility "are the exclusive province of the jury, and on sufficiency review we must assume that they were answered in a manner that supports the verdict . . . unless witness testimony is unbelievable as a matter of law." *Id.* at 1247 (citation modified). As a result, we may not revisit a witness's credibility unless his testimony is incredible as a matter of law. *Id.* at 1249. Finally, "uncorroborated testimony of an accomplice may support a conviction if it is not incredible or otherwise unsubstantial on its face." *Id.* (citation modified).

Here, the district court did not err in denying Clark's motion for a judgment of acquittal because the government presented sufficient evidence to permit the jury to find Clark guilty of each element of his convictions beyond a reasonable doubt. As for Clark's convictions for conspiracy to possess with intent to distribute methamphetamine and fentanyl and distribution of methamphetamine and fentanyl, Stevens testified that he and Clark agreed to exchange meth and fentanyl for cash, Clark knew about that agreement, and Clark voluntarily joined the agreement. Stevens specified that Clark distributed meth and fentanyl to him on numerous occasions from November of 2022 to June of 2023, when he would call Clark via phone or FaceTime, ask for methamphetamine

and/or fentanyl, and Clark would deliver him the drugs and sell them to Stevens for cash. And Stevens specifically testified that he and Clark arranged a drug purchase for June 29, 2023, when Clark drove three pounds of meth and 100 grams of fentanyl to Stevens in Anniston, Alabama, and sold the drugs to Stevens for $8,900. Clark brought the drugs in his car, establishing possession, and sold them to Stevens, establishing distribution.

This testimony, which the jury deemed credible, was sufficient to sustain the jury's findings of each element of Clark's convictions for knowingly conspiring to possess with intent to distribute and knowingly distributing meth and fentanyl. *See Fleury*, 20 F.4th at 1367; *Colston*, 4 F.4th at 1187; 21 U.S.C. § 841(a)(1). And because Stevens's testimony was not "unbelievable as a matter of law," we do not disturb that credibility finding. *Gregory*, 128 F.4th at 1247 (citation modified).

Similarly, as for Clark's convictions for using a telephone to facilitate a drug trafficking crime, Stevens testified that he and Clark would regularly communicate via telephone to negotiate and plan drug purchases. There also was evidence showing that Stevens and Clark negotiated and planned the drug sale on June 29, 2023 over the phone and via text. This testimony was sufficient for the jury to find that Clark used the phone to facilitate the drug trafficking crime -- i.e., that the use of the phone made the drug sale "easier or less difficult." *Id.* at 1250.

Because the government produced sufficient evidence to support the jury's guilty verdicts as to all counts, we affirm the district court's denial of Clark's motion for judgment of acquittal.

**AFFIRMED.**